PACIFIC COAST MEDICAL ENTER-
PRISES, a California Corporation,
Plaintiff,

v.

Joseph A. CALIFANO, Secretary of the United States Department of Health, Education and Welfare, Blue Cross of Southern California, a California Corporation, and Blue Cross Association, an Illinois Corporation, Defendants.

No. CV 75–1769–WMB.

United States District Court,
C. D. California.

May 18, 1977.

On Motion for Reconsideration
Aug. 16, 1977.

Sherwin L. Memel, Memel, Jacobs & Gersh, Los Angeles, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civ. Div., Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., Henry Eigles, Dept. of HEW, Columbia, Md., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BYRNE, District Judge.

The cause was tried upon the Supplemental Complaint For Money Due and For Declaratory Relief, the Defendants Answer to Supplemental Complaint, Stipulation of Facts and certified copies of the records of the administrative proceedings filed with the court by defendants. The cause having been argued and submitted for decision, and the Court, being fully advised on the premises, now makes its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Pacific Coast Medical Enterprises (hereinafter referred to as "PCME") is a corporation duly organized and existing under and by virtue of the laws of the State of California with its principal place of business located in Los Angeles, California, within the Central District of California.

2. Defendant Joseph A. Califano, Jr. (hereinafter referred to as "the Secretary") is the Secretary of the United States Department of Health, Education and Welfare and in that capacity is charged by law with responsibility for administering the Medicare Act. The Secretary administers the Medicare program through the Social Security Administration, the Bureau of Health Insurance and various private organizations.

3. Defendant Blue Cross Association (hereinafter referred to as "Blue Cross") is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois doing business in the Central

District of California. At all times pertinent hereto, pursuant to a contract entered into with the Secretary, Blue Cross has acted and now acts as a fiscal intermediary between the Secretary and certain providers of medical services in connection with the administration and regulation of the Medicare program.

4. Defendant Blue Cross of Southern California (hereinafter referred to as "Blue Cross So. Cal.") is a corporation duly organized and existing under and by virtue of the laws of the State of California with its principal place of business located within the Central District of California. At all times pertinent hereto, pursuant to contract with Blue Cross, Blue Cross So. Cal. acted as the Medicare fiscal intermediary between certain providers of medical services in the Southern California area, including PCME, and the Secretary.

5. At all times pertinent hereto, the Social Security Administration ("SSA") was the unit of the Department of Health, Education and Welfare which had the responsibility for policy formation and the general management and operational aspects of the Medicare program. At all times pertinent hereto, the Bureau of Health Insurance was the administrative component of the SSA assigned the primary responsibility for the formulation of policies and procedures and for the administration of the Medicare program.

6. At all times herein mentioned, and in doing all of the things herein stated, SSA, the Bureau of Health Insurance, Blue Cross and Blue Cross So. Cal. acted as the agents of the Secretary.

7. Prior to May 21, 1969, Community Hospital of Los Angeles ("Community Hospital") was a corporation duly organized and existing under and by virtue of the laws of the State of California and was a Medicare provider pursuant to contract with the defendants. Prior to May 21, 1969, Community Hospital was a corporation owned and operated by people entirely unrelated to PCME.

8. On or about May 21, 1969, PCME and Community Hospital corporation stockholders entered into an agreement pursuant to which PCME acquired 100% of the stock of Community Hospital corporation in exchange for approximately $7,000,000 of PCME stock. The value of this consideration is not disputed.

9. On or about February 25, 1970, PCME, pursuant to the California Corporations Code statutory procedure for corporate dissolutions, liquidated Community Hospital corporation and the assets of Community Hospital corporation were distributed to PCME.

10. It was at all times the intent of PCME to acquire the assets of the Community Hospital corporation and the purchase of the stock was a preliminary step to the dissolution of the corporation. In order (i) to accommodate the tax planning desires of the former shareholders of Community Hospital corporation and (ii) to avoid an acceleration provision in a mortgage on Community Hospital property, PCME purchased the stock and delayed liquidation of the Community Hospital corporation for nine months.

11. The exchange of PCME stock for the purchase of the stock from the stockholders of Community Hospital corporation was undertaken between unrelated parties in an arms length bona fide transaction.

12. The execution of the PCME–Community Hospital corporation stockholders agreement took place on May 30, 1969. Immediately thereupon, PCME took over management of Community Hospital, and made many changes in the operation thereof, including, but not necessarily limited to, changes of administrator, accountants, attorneys, bank accounts, general management, and directors.

13. On or about May 31, 1969, Community Hospital corporation's former accountants filed a cost report with the Secretary for the Community Hospital corporation to terminate its participation in the Medicare program. On or about June 30, 1969, PCME's accountants filed a cost report for the Community Hospital facility covering the month of June because June 30th was

the end of PCME's fiscal year. The Secretary did not accept either of these cost reports because he did not recognize the sale of the stock of the Community Hospital corporation as a change of ownership of the provider facility or the change in fiscal year. On or about February 28, 1970, the final report for the Community Hospital corporation was filed and accepted by the Secretary. On or about June 30, 1970, a cost report was filed by PCME as a new provider for the Community Hospital facility which report was accepted by the Secretary.

14. Following the dissolution of Community Hospital corporation on or about February 25, 1970, the Secretary recognized PCME as the new provider. A new provider agreement, effective February 28, 1970, was entered into by and between PCME, as provider, and the Secretary.

15. At all times PCME treated the purchase of the Community Hospital corporation stock and the subsequent liquidation of that corporation as a purchase of the assets of Community Hospital. PCME assigned a value to the acquired assets and the established goodwill of Community Hospital based on the amount paid by PCME for the stock of Community Hospital corporation.

16. PCME treated the purchase of stock and subsequent liquidation of Community Hospital corporation as a purchase of assets on its tax returns pursuant to § 334(b)(2) of the Internal Revenue Code. The Internal Revenue Service audited PCME's tax returns and accepted this treatment for Federal tax purposes.

17. PCME treated the purchase of stock and subsequent liquidation of Community Hospital corporation as a purchase of assets for purposes of reporting to the Corporations Commissioner of the State of California, who issued permits in accordance with the California Corporations Code.

18. PCME filed reports with the Federal Securities and Exchange Commission ("SEC") reporting the purchase of stock and subsequent liquidation of Community Hospital corporation as a purchase of assets, which reports were accepted by the SEC for its purposes.

19. In the cost reports submitted by PCME to Blue Cross So. Cal. subsequent to its acquisition of Community Hospital corporation, PCME attempted to obtain recognition of gain on certain assets of Community Hospital corporation. Blue Cross So. Cal. refused to recognize the purchase of stock of Community Hospital corporation from its stockholders by PCME and subsequent liquidation of Community Hospital corporation as a purchase of assets from the former provider corporation, with respect to Title XVIII of the Social Security Act.

20. Based on the above finding, Blue Cross So. Cal. refused to permit PCME to report as costs (and thereby receive reimbursement for) the stepped-up basis for the assets acquired or any of the goodwill generated. Instead, Blue Cross So. Cal. allowed reimbursement for depreciation to be paid only on the basis of the cost of the fixed assets of Community Hospital to the former owners thereof rather than on the basis of the cost incurred by PCME in acquiring the assets. In addition, because Blue Cross So. Cal. would not allow any stepped-up basis for the assets or include any goodwill in PCME's equity capital, it therefore, refused to pay PCME any return on equity capital on such stepped-up basis or goodwill.

21. As a result of the above determination, Blue Cross So. Cal. disallowed PCME's claims for the cost reporting years ending June 30, 1970, 1971, and 1972.

22. PCME appealed the said cost disallowances for the years 1970, 1971, and 1972 to the administrative appeals body maintained by Blue Cross for the resolution of such provider reimbursement disputes.

23. On or about February 11, 1975, the Blue Cross Chief Hearing Officer decided the issues on appeal in favor of PCME.

24. In a letter dated April 4, 1975, after the Blue Cross administrative appeal decision was rendered in favor of PCME, the Bureau of Health Insurance directed Blue Cross to reverse its decision, acting under authority contained in 20 C.F.R. § 405.-

1885(b). Blue Cross informed PCME by letter dated May 12, 1975, that Blue Cross had reversed its decision upon the instructions of the Bureau of Health Insurance.

25. The decision of Blue Cross reversing its prior appellate determination is the final decision of the Secretary for PCME's cost reporting years ending June 30, 1970, 1971 and 1972.

26. As a result of the determinations of Blue Cross So. Cal. described in Findings of Fact 19–20, *supra,* PCME's claim for its cost reporting year ending June 30, 1973 was also disallowed.

27. On April 28, 1975, PCME appealed the cost disallowance for the cost reporting year ending June 30, 1973 to the Provider Reimbursement Review Board.

28. On August 19, 1975, the Provider Reimbursement Review Board rendered a decision in favor of PCME on its disputed claim for cost reporting year 1973.

29. The Commissioner of Social Security reviewed the Review Board ruling and issued a decision on October 17, 1975, reversing the Board determination as to PCME's claim for the cost reporting year ending June 30, 1973.

30. The Commissioner's findings read, in pertinent part, as follows:

"[T]he Commissioner of Social Security makes the following specific findings:

"1. Community Hospital of Los Angeles, a corporation, was the provider corporation and owned the assets of the hospital prior to the purchase, closed under agreement on May 31 [sic], 1969 of 100 percent of its capital stock by Pacific Coast Medical Enterprises, a corporation.

"2. Community Hospital of Los Angeles, a corporation, continued to be the provider corporation following the purchase of its capital stock by PCME.

"3. The purchase of the capital stock of a corporate provider does not constitute a change of ownership within the meaning of the Social Security Act and the regulations thereunder.

Therefore, no change of ownership of the assets occurred in the purchase of Community Hospital of Los Angeles capital stock by PCME.

"4. The subsequent liquidation of Community Hospital of Los Angeles, a corporation, on February 25, 1970, and the acquisition of its assets and liabilities by PCME constitutes a change of ownership of the assets. However, the transaction was effected between related organizations. Therefore, PCME may not increase the bases of the assets for depreciation, equity capital, and other purposes under the program, but must use for program purposes the historical cost incurred by Hospital corporation in acquiring the assets.

"DECISION

"It is the decision of the Commissioner of Social Security that under title XVIII of the Social Security Act that allowances may not be made in the Provider's cost reimbursement formula for increased asset valuations and costs resulting from the transactions leading to the acquisition of Community Hospital of Los Angeles, a corporation, by the Pacific Coast Medical Enterprises, a corporation. The decision of the Provider Reimbursement Review Board is reversed."

31. The decision of the Commissioner of Social Security reversing the prior determination of the Provider Reimbursement Review Board is the final decision of the Secretary for PCME's cost reporting year ending June 30, 1973.

32. Any Conclusions of Law, to the extent they are deemed to be Findings of Fact, are incorporated into these Findings of Fact.

## CONCLUSIONS OF LAW

### I. JURISDICTION

1. The provisions of 28 U.S.C. §§ 1331, 1361 and 2201, and 5 U.S.C. § 701 *et seq.* do not provide independent grants of jurisdiction for judicial review of adverse administrative determinations of provider

reimbursement claims under Title XVIII of the Social Security Act. *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Califano v. Sanders,* 430 U.S. 99, at 107, 97 S.Ct. 980, at 985, 51 L.Ed.2d 192 (1977); *Rothman v. Hospital Service of Southern California,* 68–1325–JWC (C.D.Calif., April 15, 1977); *James D., Inc. v. Nationwide Insurance Co.,* C–2–75–471 (S.D.Ohio, March 21, 1977).

■ 2. Title XVIII of the Social Security Act provides jurisdiction for judicial review of administrative determinations of provider reimbursement claims only as set out in Section 1878(f) of the Act, 42 U.S.C. 1395oo (f). Such jurisdiction pertains only to review of adverse decisions of the Provider Reimbursement Review Board or a subsequent review determination of the Secretary as provided in Section 1878 of the Act, for provider costs reporting years ending on or after June 30, 1973.

3. The court does not have jurisdiction for judicial review of the final administrative .determination of plaintiff's provider reimbursement claims under Title XVIII of the Social Security Act for its cost reporting years ending June 30, 1970, 1971 and 1972.

■ 4. The court has jurisdiction for judicial review of the final administrative determination of plaintiff's provider reimbursement claims under Title XVIII of the Social Security Act for its cost reporting year ending June 30, 1973. Such jurisdiction is provided by Section 1878(f) of the Act, 42 U.S.C. 1395oo (f).

## II. SCOPE OF REVIEW

■ 5. The scope of this court's review of the final decision of the Secretary is determined by § 701 *et seq.* of Title 5, U.S.C., pursuant to § 1878(f) of the Social Security Act, 42 U.S.C. 1395oo (f). The court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate stan-dard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). See *also* K. C. Davis, *Administrative Law of the Seventies* §§ 29.00–.01 (1976).

## III. PERTINENT STATUTES AND REGULATIONS

6. Section 1861(v) of the Social Security Act (42 U.S.C. § 1395x) provides, in pertinent part:

"(1)(A) The reasonable cost of any services shall be the cost actually incurred . . . and shall be determined in accordance with regulations establishing the method or methods to be used . . ."

7. Pursuant to the authority contained in Section 1861(v) of the Social Security Act, the Secretary promulgated regulations establishing the methods of determining reasonable costs for reimbursement of Medicare services. These regulations are contained in 20 C.F.R. §§ 405.401–.499.

8. At the time of the PCME–Community Hospital transaction, and at all times material hereto, the following regulations provided, in pertinent part, as follows:

A. 20 C.F.R. § 405.415(a):

"Depreciation. Allowance for depreciation based on asset costs.

"*Principle.* An appropriate allowance for depreciation on buildings and equipment is an allowable cost.

The depreciation must be:

(1) Identifiable and recorded in the provider's accounting records;

(2) Based on historical cost of the asset or fair market value at the time of donation in the case of donated assets; and

(3) Pro-rated over the estimated useful life of the asset. . . ."

B. 20 C.F.R. § 405.415(b) defined historical cost as "the cost incurred by the present owner in acquiring the asset."

C. 20 C.F.R. § 405.415(g):

"*(g) Establishment of cost basis on purchase of facility as an ongoing operation.* In establishing the cost basis for a facility purchased as an ongoing operation after July 1, 1966, the price paid by the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of the sale."

D. 20 C.F.R. § 405.427:

"Cost to related organizations.

"(a) *Principle.* Costs applicable to services, facilities and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions.* (1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

(c) *Application.* (1) Individuals and organizations associate with others for various reasons and by various means. Some deem it appropriate to do so to assure a steady flow of supplies or services, to reduce competition, to gain a tax advantage, to extend influence, and for other reasons. These goals may be accomplished by means of ownership or control, by financial assistance, by management assistance, and other ways.

(2) Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. An example would be a corporation building, a hospital or a nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price."

E. 20 C.F.R. § 405.429:

"Return on equity capital of proprietary providers.

"(a) *Principle.* (1) A reasonable return on equity capital invested and used in the provision of patient care is allowable as an element of the reasonable cost of covered services furnished to beneficiaries by proprietary providers. The amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program."

F. 20 C.F.R. § 405.625:

"Transfer of provider ownership: general.

(a) A transfer of ownership of a provider of services participating in the health insurance program under an agreement with the Secretary will, under the conditions discussed in § 405.626, render such agreement invalid as between the Secretary and the transferee. In order for the new entity to participate in the program, it must be established that it meets the conditions for participation appropriate to the hospital, skilled nursing facility or home health agency, or rehabilitation agency or clinic as the case may be (see Subparts J, K and L of

this Part 405) and that it meets the requirements of Title VI of the Civil Rights Act of 1964 (78 Stat. 252: P.L. 88–352).

(b) A participating provider contemplating or negotiating a change of ownership must advise the Secretary of such a contingency to assure, if the successor owner desires to participate in the program, continued payment to the hospital, skilled nursing facility or home health agency, rehabilitation agency, or clinic on behalf of individuals entitled under title XVIII of the Act."

G. 20 C.F.R. § 405.626(c):

"Change of ownership; participation in the health insurance program.

" . . .

"(c) *Corporation.* If the provider is a corporate body, a transfer of corporate stock would not, in itself, constitute a change of ownership for the purpose of section 1866 of the Act. Similarly, a merger of one or more corporations with the participating provider corporation surviving would not generally require a new certification or the execution of a new provider agreement with the surviving entity. A consolidation of two or more corporations resulting in the creation of a new corporate entity would constitute a change of ownership, however, requiring a certification by the State agency and the filing of a provider agreement with the Secretary by the new corporation."

H. 20 C.F.R. § 405.1875:

"Secretary's review.

"(a) The Secretary, on his own motion and at his discretion, may elect to review a decision of the Board which is favorable in whole or in part to the provider. A right to such a review does not vest in parties to the Board's decision.

(b) The Secretary will promptly notify all parties to the Board's hearing of his election to review the Board's decision and of the result of such review."

I. 20 C.F.R. § 405.1885:

"Reopening a determination or decision.

" . . .

"(b) A determination or a hearing decision rendered by the intermediary shall be re-opened and revised by the intermediary if, within the aforementioned 3-year period, the Social Security Administration notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Social Security Administration in accordance with the Secretary's agreement with the intermediary."

## IV. APPLICATION OF STATUTES AND REGULATIONS

█ 9. Section 8.D 1 of the Department of Health, Education and Welfare's "Statement of Organization, Functions and Delegations of Authority", published in the Federal Register on April 16, 1968 (33 F.R. 5836) sets forth the following delegation to the Commissioner of Social Security:

"the Commissioner of Social Security shall exercise:

a. The functions vested in the Secretary * * * under Title XVIII of the [Social Security] Act, as amended (42 U.S.C. 1395–1395 11) * * *."

The delegation vests all functions of the Secretary of Health, Education and Welfare under Title XVIII of the Social Security Act, as amended, in the Commissioner of Social Security. The parenthetical citation is merely the United States Code identification of Title XVIII as it existed at the time of the Federal Register publication on April 16, 1968 and does not limit the Commissioner's functions under Title XVIII with regard to subsequent amendments. Pursuant to this delegation, the Commissioner may properly exercise the functions of the Secretary under Section 1878(f) of the Act, 42 U.S.C. 1395oo (f), to review a determination of the Provider Reimbursement Review Board created by Section 1878, originally enacted with the Social Security Amendments of 1972 (§ 243, P.L. 92–603, October 30, 1972). The Commissioner lawfully acted on behalf of the Secretary in issuing his determination dated October 17, 1975, reversing the decision of the Provider Reimbursement Review Board.

■ 10. The provisions of Title XVIII of the Social Security Act and regulations promulgated by the Secretary thereunder constitute the law controlling provider participation and reimbursement in the Medicare program. The Secretary is not bound by provisions of the Internal Revenue Code or provisions of State law and is entitled to make his own determination under the laws which he administers. *C. I. R. v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Skeels v. Richardson,* 453 F.2d 882 (5th Cir. 1972); *Dupkunis v. Celebrezze,* 323 F.2d 380 (3rd Cir. 1963); *Lane v. RRB,* 185 F.2d 819 (6th Cir. 1950).

■ 11. On May 30, 1969, PCME acquired ownership of one hundred percent of the stock of Community Hospital and immediately took over management and administration of the hospital facility. At the time of the stock acquisition, PCME intended in the near future to liquidate Community Hospital. PCME had decided to delay liquidation in order to accommodate the tax objectives of former shareholders of Community Hospital and to avoid a mortgage acceleration clause. After PCME acquired one hundred percent ownership of Community Hospital stock, it ·could at any time have exercised its right to commence liquidation proceedings.

There is no evidence of self-dealing or other conduct that would make the Community Hospital acquisition less than the result of a bona fide negotiation. Under these circumstances, PCME's purchase of one hundred percent of the stock of Community Hospital on May 30, 1969, when coupled with (i) its immediate and plenary takeover of Community Hospital's administration and management, (ii) its intent to liquidate the corporation in the near future, and (iii) its power to liquidate at any time, constituted a purchase of an on-going operation for purposes of establishing a cost basis for a facility pursuant to 20 C.F.R. § 405.415(g).

■ 12. The Secretary urges that 20 C.F.R. § 405.626 ["Change of ownership; participating in the health insurance program."] precludes the May 30, 1969 stock acquisition from constituting a change of ownership of the facility for the purpose of computing depreciation and a return on equity capital as reimbursable costs under the Act. The court finds that 20 C.F.R. § 405.626 is not applicable to this case and does not preclude a finding of change of ownership for reimbursement purposes.

Section 405.626 is included in Subpart F of Title 20, Code of Federal Regulations ["Agreements, Elections, Contracts, Nominations, and Notice"] and must be read in conjunction with the section immediately preceding it in that Subpart. Section 405.625 ["Transfer of provider ownership; general."] explicitly refers to § 405.626 in setting forth a broad rule invalidating a provider agreement when it has been assigned by the original owner of a provider to a new owner who has not yet qualified for participation in the health services program. Read juxtaposed to this preceding section, § 405.626, particularly subpart (c) thereof, constitutes only an exception to the general provider agreement invalidation rule of § 405.625(a), by providing that the mere transfer of stock of an eligible provider does not compel requalification of the transferee for continued participation in the program. Section 405.626 relates to Medicare provider contracts and agreements and does not establish criteria for reimbursement.

Furthermore, even if Section 405.626(c) were to be considered relevant to reimbursement determinations, the specific language of the section does not preclude this transaction from constituting a change of ownership. Subsection (c) of § 405.626 states, in part:

"If the provider is a corporate body, a transfer of corporate stock would not, in itself, constitute a change of ownership for the purpose of section 1866 of the Act."

The words, "in itself", suggest that if the particular transaction involves more than the mere transfer of corporate stock, the section's conclusion of no change of ownership does not necessarily apply. Here, more than a mere stock transfer occurred. Coincident with the transfer of one hundred

percent of the stock was the assumption of management and direction of Community Hospital by PCME, the intent to liquidate Community Hospital in a short period of time, and the power to do so. Section 405.-626 does not provide support for the Secretary's refusal to find a change of ownership for reimbursement purposes nor does it furnish authority for the Secretary's rejection of PCME's reimbursement claim.

■ 13. The Secretary found that the liquidation of Community Hospital on February 25, 1970, and the distribution of its assets to PCME constituted a change of ownership of the assets. He concluded, however, that this transaction was between "related organizations" as provided for in 20 C.F.R. § 405.427 and thus PCME could not increase the basis of its assets.

Contrary to the approach taken by the Secretary, the transaction between PCME and Community Hospital must be viewed in its entirety. Here PCME's plan to acquire the assets of Community Hospital consisted of the purchase of one hundred percent of the Community Hospital stock with the present intent to liquidate the corporation within nine months. When PCME and Community Hospital undertook and executed this plan, they were not related organizations within the meaning of § 405.-427.

Moreover, the Principle of § 405.427, set forth in Subsection (a) thereof, indicates that the Section's prohibition on stepped-up bases for assets applies to facilities "furnished to" or purchased by the provider from related organizations. Assets acquired by a provider by means of liquidating a corporation of which it became sole shareholder nine months earlier are not assets "furnished to" or purchased by a related organization for purposes of limiting reimbursable costs under § 405.427.

■ 14. The Secretary's interpretation of the Medicare law and regulations to the effect that PCME is not entitled to a step up in basis and recognition of goodwill because PCME acquired the assets of Community Hospital by virtue of a stock acquisi-

tion and subsequent dissolution of Community Hospital rather than by a direct purchase of assets is unreasonable, arbitrary and capricious.

15. The Secretary's failure to treat PCME's purchase of the Community Hospital corporation stock and the liquidation of Community Hospital's assets nine months thereafter as the purchase of an on-going operation under 20 C.F.R. § 405.415(g), reflected in Findings No. 3 and 4 of the Commissioner, constitutes a clear error of judgment based on the relevant factors in this case.

16. Pursuant to § 1861 of the Social Security Act (42 U.S.C. § 1395x) and 20 C.F.R. § 405.415 promulgated thereunder, PCME is entitled to receive reimbursement for depreciation of the assets acquired from Community Hospital based on the fair market value of said assets at the time of the sale of one hundred percent of Community Hospital stock on May 30, 1969, and not merely on the cost of such assets to Community Hospital.

17. Pursuant to § 1861 of the Social Security Act (42 U.S.C. § 1395x) and 20 C.F.R. § 405.429 promulgated thereunder, PCME is entitled to include in its equity capital, and receive reimbursement for (i) the goodwill generated by the PCME–Community Hospital transaction, and (ii) the tangible assets acquired from Community Hospital at their fair market value on May 30, 1969. The amount of goodwill PCME is entitled to claim is the entire excess of the amount of consideration paid for Community Hospital over the fair market value of the tangible assets of Community Hospital.

## CONCLUSION

18. Count I of Plaintiff's Supplemental Complaint asserting claims for cost reporting years ending June 30, 1970, 1971 and 1972 is dismissed pursuant to Rule 12(b), Federal Rules of Civil Procedure, for lack of jurisdiction.

19. As to Count II of Plaintiff's Supplemental Complaint, the Secretary's final decision denying plaintiff's claim for cost reporting year ending June 30, 1973, is reversed.

20. The computation of the amounts regarding PCME's claims for reimbursements for the cost reporting year ending June 30, 1973 was not made during the prior administrative proceedings and thus has not been subject to review. *Cf. Taylor v. Finch*, 423 F.2d 1277, 1280 (8th Cir. 1970).

21. The matter is remanded to Blue Cross So. Cal. for a determination of: (i) the fair market value of the assets acquired by PCME from Community Hospital, (ii) the reasonableness of the amount of goodwill claimed by PCME; and (iii) the total amount of reimbursement owed to PCME. Such determinations are to be made in conformity with the Findings of Fact and Conclusions of Law filed herein.

22. Any Findings of Fact, to the extent that they are deemed to be Conclusions of Law, are incorporated into these Conclusions of Law.

## ORDER

## ON MOTION FOR RECONSIDERATION

Judgment was entered in this case on May 19, 1977, dismissing Count I of plaintiff's supplemental complaint regarding its claims for reimbursement for the cost reporting years ending June 30, 1970, 1971, and 1972, for lack of jurisdiction. In this motion, plaintiff seeks to have that part of the judgment reconsidered. In addition, pursuant to Rule 62(c), plaintiff seeks an injunction pending appeal, enjoining the defendants from continuing to withhold provider reimbursement payments due under the terms of the judgment. The government has moved for a stay of enforcement of the judgment pending appeal. At the hearing on plaintiff's motions held on July 18, 1977, counsel for both sides stipulated that defendants' motion would be submitted for the court's decision contemporaneous with plaintiff's motions.

 After a consideration of the pleadings, and the oral arguments of counsel, this court concludes that plaintiff's motion for reconsideration of the jurisdictional determination must be viewed as being brought under Rule 59(e), Federal Rules of Civil Procedure. That rule requires a party seeking to alter or amend a judgment serve its motion not later than 10 days after entry of judgment. Plaintiff did not file notice of this motion for reconsideration until June 23, 1977, more than a month after entry of judgment. Rule 59(e) is to be strictly construed and the 10-day filing period may not be extended under Rule 6(b). *Davidson v. Dixon*, 386 F.Supp. 482 (D.Del.1974), *aff'd*, 529 F.2d 511 (3d Cir. 1975). Further the 10-day limitation period of Rule 59(e) may not be enlarged by improper application of Rule 60(b). *National Farmers Union Automobile & Casualty Co. v. Wood*, 207 F.2d 659 (10th Cir. 1953). The plaintiff's motion must be rejected as untimely. *Rothman v. Hospital Service of Southern California*, CV 68–1325–JWC (Order Denying Plaintiff's Motion to Vacate Dismissal, Filed July 15, 1977).

 Moreover, even if the plaintiff's motion is considered to have been properly brought as a motion under Rule 60(b), this court finds no basis for reversing its jurisdiction determination as to the pre-1973 cost reimbursement claims.

Plaintiff argues that the court always has jurisdiction to review constitutional claims under the Medicare program, regardless of the year in which they arise. While the court agrees with plaintiff's position as a general proposition, it does not find that plaintiff's allegations of constitutional deprivation were the gravamen of its case. The grievances alleged did not truly possess a constitutional dimension. Rather, they concerned misapplication of certain reimbursement provisions in the Medicare regulations that plaintiff sought to have interpreted by this court, particularly Sections 405.427, limiting reimbursements based on expenses incurred between related organizations, and 405.626, establishing criteria for determining when new owners of provider facilities must requalify under the Medicare program. As to the cost-reporting year 1973 claims that the court had jurisdiction to review, the plaintiff urged, and the court found, that the defendants' interpretation of these regulations as ap-

plied to plaintiff's claims evidenced a clear error of judgment based on the relevant factors. The court found no Fifth Amendment due process violation.

To countenance the plaintiff's characterization of its case as involving Fifth Amendment issues would go a long way toward establishing a rule that every reversal of an administrative agency's decision amounts to a finding of a violation of due process against the government defendant, regardless of the relief actually sought or actually granted. The court realizes the disparity of plaintiff's review rights for claims for reporting years ending before June 30, 1973, and those ending on or after that date. However, the court cannot stretch the facts or recast the issues in this case to elevate its significance to the constitutional heights urged in this motion. Absent a substantial constitutional claim, this court's jurisdiction is limited to those areas granted by statute.

As to federal question jurisdiction under 28 U.S.C. § 1331, plaintiff has presented no new arguments to avoid the conclusion, well supported by the Supreme Court's opinion in *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), that such jurisdiction is specifically precluded in the Social Security Act, 42 U.S.C. § 405(h).

██ Plaintiff also renews its contention that pre-1973 claims can be heard under the court's federal mandamus jurisdiction, 28 U.S.C. § 1361. It relies principally upon the recent decision of the Court of Appeals for the Ninth Circuit in *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977). In *Elliott*, the court found that mandamus jurisdiction was properly laid to hear the claim of old-age and disabled beneficiaries under the Social Security Act who alleged denial of Fifth Amendment rights of due process under the government's recoupment procedures to recover monies paid to them in excess of their monthly entitlements. The court stated:

"The instant suits . . . assert a constitutional right to due process notice and hearing when alleged overpayments are recouped. They are not claims for benefits. Nor would granting the relief sought result in an entitlement to benefits. The distinction between due process questions divorced from a claim for benefits and questions related to the merits of a benefits claim is a significant one, requiring considerably different treatment by the courts [Footnote and citation omitted].

"Unlike benefits cases wherein the purpose of the administrative process is served by requiring all actions to proceed through administrative review before appeal to the courts, questions of due process benefit little from administrative exhaustion." 564 F.2d at 1226–1227.

As already noted, this case is not of the core Fifth Amendment due process type, involving issues of adequate notice and hearing, but involves instead a review of an administrative agency's decision regarding the application of regulations to the facts of a particular case. This court concluded that, as to the treatment of those regulations by the defendants, the result was simply at odds with a careful reading of the regulations. That plaintiff was entitled to relief from the administrative agency's decision for the cost reporting year ending June 30, 1973 does not mean that it had also demonstrated that the defendants had deprived it of any Fifth Amendment rights, as the plaintiffs had shown in *Elliott*. Mandamus jurisdiction is restricted to those special instances "when the claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Jarrett v. Resor*, 426 F.2d 213, 216 (9th Cir. 1970); this case is not one of those special instances.

██ Whether Congress's decision to withhold this court's jurisdiction over pre-1973 reimbursement decisions was by conscious design, *see Dr. John T. MacDonald Foundation, Inc. v. Matthews*, 554 F.2d 714 at 718 (5th Cir. 1977) (Clark, J., dissenting), or by unconscious mistake, *see id.* at 716 n. 4, its power to do so, at least insofar as it does not eliminate the court's power to review colorable constitutional claims, appears undisputed. *Ex parte McCardle*, 74

U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869); *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850). Congress has created some form of review for pre-1973 claims, albeit nonjudicial; and it is not for this court to create a right of federal district court review when Congress has created none. *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 300–01, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

Regarding the cross-motions for injunctions the court agrees with plaintiff that the defendants should not withhold further Medicare reimbursements under the terms provided for in the judgment pending appeal. However, in light of the defendants' showing that the plaintiff's financial condition may be precarious, the plaintiff will be required to post a bond for security for the amount to be paid the defendant.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff's motion for reconsideration of the dismissal of Count I for lack of jurisdiction is denied.

IT IS FURTHER ORDERED that plaintiff's motion for an injunction pending appeal is granted.

Defendants shall prepare an audit of plaintiff's claims for each cost reporting year ending June 30, 1973, and thereafter, in accordance with the terms of the judgment entered on May 19, 1977. Based on these audits, defendants shall pay to plaintiff the reimbursement amounts due, provided that plaintiff post with the Clerk of the Court a bond for security equal to 100 percent of the amount due, with the bond to remain in effect until time for all appeal and all opportunities for appeal in the case have been exhausted. In the event that plaintiff shall prevail on defendants' appeal of the judgment in this case, the costs of the bond shall be paid by defendants as a cost.

IT IS FURTHER ORDERED that defendants' motion for an injunction pending appeal is denied.