CLEVELAND MEMORIAL HOSPITAL, INC., Grace Hospital Inc., Rutherford Hospital, Inc., and Nash General Hospital, Inc., Appellees,

v.

Joseph A. CALIFANO, Jr., Secretary of HEW, Blue Cross and Blue Shield of NC, Blue Cross Association, Provider Reimbursement Review Board, and Arthur P. Owens, Chairman of the Provider Reimbursement Review Board, Appellants.

No. 78–1317.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1979.

Decided March 30, 1979.

Michael Jay Singer, Civil Division, Appellate Section, Dept. of Justice Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., George M. Anderson, U. S. Atty., Raleigh, N. C., Robert E. Kopp and Judith S. Feigin, Civil Division, Appellate Section, Department of Justice, Washington, D. C., on brief), for appellants.

John T. Williamson, Raleigh, N. C. (Maupin, Taylor & Ellis, P. A., Raleigh, N. C., on brief), for appellees.

Before WINTER, BUTZNER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

The single issue presented in this appeal is whether a group of medical care providers, appealing the denial of reimbursement under the Medicare program, may aggregate more than one cost report from each group member to meet the jurisdictional amount for group appeals to the Provider Reimbursement Review Board. The district court held that such aggregation is permitted under Title XVIII of the Social Security Act, 42 U.S.C. § 1395oo (b). We affirm.

## STATUTORY BACKGROUND

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, established the Medicare program which provides, among other things, health insurance for hospital and related post-hospital costs of persons aged 65 or over. Under this program certified "providers of services"[1] do not charge Medicare beneficiaries directly, but rather are reimbursed from the Medicare trust fund for all reasonable costs of providing services to those beneficiaries, either by the Secretary of H.E.W. directly or through a

---

1. Defined as hospitals, skilled nursing facilities, home health agencies and certain hospital funds. 42 U.S.C. § 1395x(u).

public or private organization called a "fiscal intermediary" which serves as the Secretary's agent.

Each provider is reimbursed at least monthly on an interim basis, subject to later adjustment. At the end of the provider's fiscal year it submits a cost report for that year. The Secretary or fiscal intermediary later determines by audit the actual amount of reimbursement to which the provider is entitled for the year, and gives the provider a "notice of program reimbursement". This determination may be reopened and amended at any time during the three years following the notice of reimbursement. If there is a difference between the reimbursement determined to be due for a cost period (on the basis of either an initial audit or a redetermination) and the payments already made to the provider for that period, an appropriate adjustment is made in subsequent payments to the provider in order to recoup or repay the difference.

A provider dissatisfied with a reimbursement determination by its intermediary may request a hearing by the intermediary if the amount of reimbursement in controversy is at least $1,000 but less than $10,-000.[2] The intermediary's hearing decision is not subject to administrative or judicial review.

In 1972, Congress created the Provider Reimbursement Review Board to provide an independent reviewing body for certain intermediary decisions. The conditions for review by the Board, which form the basis for this appeal, are set out in 42 U.S.C. § 1395oo, as follows:

§ 1395oo. Provider Reimbursement Review Board-Establishment.

(a) Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board . . . if—

(1) such provider—

(A) is dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report,

\* \* \* \* \* \*

(2) the amount in controversy is $10,-000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination

. . . .

(b) The provisions of subsection (a) of this section shall apply to any group of providers of services if each provider of services in such group would, upon the filing of an appeal (but without regard to the $10,000 limitation), be entitled to such a hearing, but only if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.

## FACTUAL BACKGROUND

Plaintiffs are four North Carolina hospitals which provide services under the Medicare program. In late 1975 and 1976 each of the providers was notified by its fiscal intermediary (Blue Cross and Blue Shield of North Carolina) that its claims for nursing education costs were not reimbursable under H.E.W. policy guidelines, and had been disallowed for each cost period in which they had been claimed. The disallowed claims at issue [3] are the following:

---

2. The intermediary is not empowered to conduct hearings in cases where its original decision involved a claim of $10,000 or more; rather, the provider must seek review from the Provider Reimbursement Review Board. This $10,000 ceiling on review by the intermediary applies only to cost-reporting periods ending on or after June 30, 1973. 42 C.F.R. §§ 405.-1809–.1811 (1977).

3. In the cases of Cleveland Memorial Hospital and Rutherford Hospital, the intermediary reopened its original determinations for cost years extending back to 1968 in order to disallow the nursing education costs. (The intermediary's initial determinations for these earlier years were not made until 1973 or 1974, and the three-year time limit on reopenings begins to run when the initial determination is made.)

| Provider | 1973 Cost Year | 1974 Cost Year | 1975 Cost Year |
|---|---|---|---|
| Cleveland Memorial Hospital, Inc. | $ 5,000 | $ 6,540 | $ 5,200 |
| Grace Hospital, Inc. | 0 | 11,235 | 8,300 |
| Rutherford Hospital, Inc. | 6,200 | 8,340 | 8,860 |
| Nash General Hospital, Inc. | 14,331 | 15,484 | 15,243 |
| Total | $25,531 | $41,599 | $37,603 |

The hospitals sought a group hearing under § 1395*oo* (b) before the Provider Reimbursement Review Board. The Board ruled that under § 1395*oo* (a) the amount in controversy for an individual appeal is determined by the provider's claim for a single cost year,[4] that this provision was incorporated into § 1395*oo* (b), and that a group of providers seeking a hearing under § 1395*oo* (b) must therefore meet the $50,000 jurisdictional amount on the basis of only one cost report per provider. The Board noted however that if a group could meet this jurisdictional threshold, claims from additional cost years would then be considered as part of the appeal.

Since for each individual cost reporting year in issue here, the combined claims of the group failed to meet the $50,000 requirement,[5] the Board dismissed the appeal, but offered to hold four separate hearings on those individual claims which met the $10,000 requirement for single appeals.

However, since the jurisdiction of the Provider Reimbursement Review Board is limited to claims arising from cost years ending on or after June 30, 1973, Pub.L. 92–603, § 243(c), this appeal concerns only claims based on cost reports from 1973 or later.

4. We express no opinion on the correctness of this interpretation of § 1395*oo* (a), which has not been questioned in this case.

5. The Board left open the question of whether the providers could meet the jurisdictional amount by aggregating each hospital's largest single claim, since even this procedure would not enable the group to meet the $50,000 requirement.

6. The provider also has a right to a hearing if it has not received a determination by the intermediary within 12 months after it filed a proper

The hospitals then brought this action in district court seeking a declaratory judgment that the Board's interpretation of the jurisdictional requirement is not in accordance with applicable law, and an order directing the Board to hear the group appeal. The district court granted the hospitals' motion for summary judgment and entered the requested order.

## DISCUSSION

We agree with the district court's conclusion that in enacting § 1395*oo* (b) Congress intended to provide for review by the Board of the type of claims at issue here. The prerequisites for individual appeals under § 1395*oo* (a), *with the exception of the amount in controversy requirement*, also apply to group appeals under § 1395*oo* (b), so that each claim included in the group appeal must stem from an adverse final determination[6] by the intermediary based on a cost report which was filed by the provider within the applicable time requirements. 42 U.S.C. § 1395*oo* (a)(1). In addition, a claim may be included in the group appeal only if the provider filed a request for a hearing within 180 days after notice of the intermediary's final determination on the claim.[7] 42 U.S.C. § 1395*oo* (a)(3).

The parties agree that the claims at issue here satisfy all these requirements and that they all involve a common question of law or fact. The only remaining prerequisite

cost report. 42 U.S.C. § 1395*oo* (a)(1)(B), (C); 42 C.F.R. § 405.1835 (1977).

7. This 180-day filing requirement will, in most cases, limit group appeals to claims based upon the single most recent cost report of each group member. A group member usually will have received final determinations on claims covering a number of years within a time period short enough to meet the 180-day requirement only where the intermediary has not rendered a prompt determination on a cost report, or where the intermediary has reopened prior determinations to disallow a series of similar claims. In the latter situation, exemplified by this case, the intermediary's action will typically be based upon policy considerations and so will present particularly appropriate issues for resolution by the Board and for review by the courts.

for a group appeal is that "the amount in controversy is, *in the aggregate,* $50,000 or more." 42 U.S.C. § 1395oo(b) (emphasis supplied).

The claims involved in this appeal, all of which will be considered together by the Board in a group appeal if jurisdiction is established, total $104,733. We believe that this figure, the aggregate amount of the claims properly considered in a group appeal, is also the "amount in controversy" for purposes of determining whether the jurisdictional requirement is met. The Board's distinction, by which one figure determines the scope of the appeal and another determines jurisdiction, is without foundation in either the statute or the applicable regulation.[8] It is also unrelated to the purpose of the amount in controversy requirement, which is to ensure the substantiality of issues raised before the Board.

The legislative history of § 1395oo, although relatively brief, shows a clear intent to provide an independent review of reimbursement decisions by fiscal intermediaries which involve significant issues. The original House version of the legislation (subsection (a) of the current statute) provided only for individual appeals and ensured the significance of the issue concerned by setting a $10,000 jurisdictional requirement. H.Rep.No.92-231, *reprinted in* 1972 U.S. Code Cong. & Admin.News, pp. 4989, 5308–5310. The Senate, apparently recognizing that the overall impact of an intermediary's determination could be significant even where the amount denied to any single provider was relatively small, added a provision for group appeals where the claims of the entire group aggregate $10,000. H.Conf.Rep.No.92–1605, *reprinted in* 1972 U.S.Code Cong. & Admin.News, pp. 5370, 5387-5388. The conference committee adopted this provision for group appeals after raising the required aggregate

amount in controversy to $50,000. *Id.* The statute was amended in 1974 to provide for judicial review of all final decisions by the Provider Reimbursement Review Board, and the conference report on the amendment succinctly describes the purpose of § 1395oo: the creation of an independent body "to review and decide upon *substantial* reimbursement issues raised by providers of services." H.Conf.Rep.No.93–1407, *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 5995–5996 (emphasis supplied).

It is unquestioned that the issue raised by the claims in this case is a substantial one. Four of the eleven individual claims involve amounts sufficient to entitle the providers to individual appeals. Absent a clear indication that Congress intended such a result, we cannot accept an interpretation of the statute's jurisdictional amount provision which would require the Board to hold four separate hearings on claims involving an identical issue, but would preclude it from holding a single hearing combining those four claims with seven others involving the same issue.

We find no such intent in the statute or its history. The statute says that group members may aggregate their claims to reach the $50,000 amount in controversy requirement. The plain meaning of this provision is that *all* claims which are properly joined in a group appeal—those which involve common questions of law or fact and for which timely initial claims and notices of appeal were filed—may be aggregated to meet the jurisdictional amount in controversy. Therefore, the judgment of the district court is

*AFFIRMED.*

---

8. H.E.W. regulations provide the following method of determining whether the claims of a group of providers meet the $50,000 jurisdictional amount:

The $50,000 amount in controversy will be computed by deducting the adjusted total reimbursable program costs (in the aggregate) from the total reimbursable program costs (less any amounts excluded by section 1862 of the Act) which are claimed in the aggregate by the providers and are related to a common issue or interpretation of law or regulations. 42 C.F.R. § 405.1839(b) (1977).