962 F.2d 1110
 37 Soc.Sec.Rep.Ser. 234, Medicare & Medicaid Guide
P 40,159
ST. FRANCIS MEDICAL CENTER
v.
Louis W. SULLIVAN, M.D., Secretary of the Department of
Health and Human Services, and Louis B. Hayes, Acting
Administrator, Health Care Financing Administration, and
Elise D. Smith, Chairman Provider Reimbursement Review
Board, United States of America, Appellant in No. 91-3406,
Louis W. Sullivan, M.D., Secretary of the Department of
Health and Human Services, and Louis B. Hayes, Acting
Administrator, Health Care Financing Administration, and
Elise D. Smith, Chairman Provider Reimbursement Review
Board, Appellants in No. 91-3429.
 Nos. 91-3406, 91-3429.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 10, 1991.
Decided April 24, 1992.
 
 Stuart Gerson, Asst. Atty. Gen., Thomas W. Corbett, Jr., U.S. Atty., Bonnie R. Schluetter, Asst. U.S. Atty., Pittsburgh, Pa., Barbara H. Fisher (argued), Office of the Gen. Counsel, Baltimore, Md., and John P. Schnitker and Barbara C. Biddle, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for appellants.
 Stephen P. Nash (argued) and Domenic A. Bellisario, Nash & Co., Pittsburgh, Pa., for appellees.
 Before: SCIRICA, ALITO, and SEITZ Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal by the Secretary of the Department of Health and Human Services, et al. from an order of the district court. That order overturned the Provider Reimbursement Review Board's ("Board") refusal on jurisdictional grounds to grant the request of the plaintiff, St. Francis Medical Center ("Medical Center"), for a hearing. The dispute arises over reimbursement allegedly due from the Secretary to a provider of hospital services under the Medicare statute, 42 U.S.C. § 1395 et seq. The narrow issue presented is whether the provider met the requirement in the statute, 42 U.S.C. § 1395 oo(a) (1984) that limits hearing by the Board to claims involving amounts of $10,000 or more. The Medical Center asserts, alternatively, that federal question jurisdiction is available to entertain this provider's claims pursuant to 28 U.S.C. § 1331 (1980).
 
 
 2
 I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 
 A. STATUTORY AND REGULATORY BACKGROUND
 
 3
 The Medical Center is a "provider" of health care services covered under Part A of the Medicare statute, 42 U.S.C. § 1395 et. seq. Payments under Part A are made directly to eligible providers under the reimbursement scheme enacted in 1982, the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248 (codified, as amended, at 42 U.S.C. § 1395ww(b) (1988)).
 
 
 4
 Under TEFRA, a hospital may receive no more than the "target amount" of per patient costs that is calculated according to the hospital's actual cost of service in the base year. The base year cost reporting period is the year prior to the first year when the TEFRA reimbursement scheme becomes effective. See 42 U.S.C. § 1395ww(b)(3)(A) (1988). In that year and in subsequent years, a hospital's Medicare reimbursement is limited to "the allowable operating costs of inpatient hospital services" incurred in the base year. § 1395ww(b)(3)(E). The TEFRA target amount determines the maximum amount of reimbursement that the hospital can receive per patient in subsequent years. If the hospital renders care at a cost below its TEFRA target amount, it receives an "incentive payment" as a reward for its efficiency. The incentive payment is equal to fifty percent of the difference between the hospital's actual costs and its target amount of maximum per patient reimbursement. 42 U.S.C. § 1395ww(b).
 
 
 5
 The jurisdictional dispute in this case arose from the Medical Center's claim as a provider seeking to adjust the cost report for the base year 1985, in order to qualify for an incentive payment. The Medical Center's base year adjustment request was denied by the intermediary and it sought a hearing to review that determination before the Board. Such a hearing may be obtained if the jurisdictional requirements of § 1395oo(a) are met. That section provides:
 
 
 6
 Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by [the Board] ... if--
 
 
 7
 (1) such provider--
 
 
 8
 (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, ...
 
 
 9
 ....
 
 
 10
 (2) the amount in controversy is $10,000 or more, and
 
 
 11
 (3) such provider files a request for a hearing within 180 days after notice of the intermediary's [or Secretary's] final determination....
 
 
 12
 (emphasis added)
 
 
 13
 The Board denied the Medical Center's request on the ground that it lacked jurisdiction under § 1395oo(a) because the amount in controversy requirement was not met. Ultimately, the Board's decision becomes final unless the Secretary, on his own motion, within 60 days, reverses, affirms or modifies the Board's decision. See 42 U.S.C. § 1395oo(f)(1) (1984). In this case, the Secretary did not alter the Board's decision and it became final. The Medical Center then filed this action in the district court, inter alia, under § 1395oo(f)(1). The district court reversed the Board's ruling and the Secretary now appeals.
 
 B. ADMINISTRATIVE AND JUDICIAL PROCEEDINGS
 
 14
 The Medical Center sought reimbursement under TEFRA as a "distinct part rehabilitation unit," as defined by the TEFRA regulations.[1] The intermediary, Blue Shield of Western Pennsylvania, concluded that the Medical Center was not a "rehabilitation unit" under the regulations since less than 75% of its patients required intensive rehabilitation. The intermediary terminated the provider as a distinct part rehabilitation unit and the Health Care Finance Administration (hereinafter "HCFA") upheld that decision. To comply with the 75% rule, the Medical Center transferred some of its "non-qualifying" patients from the rehabilitation unit to its acute care facility. This transfer was completed in the year ending July 30, 1986, beyond the base year.
 
 
 15
 The non-qualifying patients in the rehabilitation unit in 1985 were nevertheless included in the Medical Center's 1985 base year cost report. Since the Medical Center's TEFRA target amount was set according to that base year, the Medical Center's 1985 cost report substantially underestimated its actual costs in 1986. The underestimate arose from the fact that certain "non-qualifying" patients were included on the original 1985 cost report for the Medical Center's rehabilitation unit, but then were transferred out of that unit by 1986. The absence of these "non-qualifying" patients from the group of patients treated by the unit in 1986 meant that the Medical Center's average patient costs were higher in 1986 than the estimates of those costs derived from the 1985 base year cost report. In addition, the base year cost report did not include costs associated with a physical expansion project completed in 1986. The difference between 1985 and 1986 average patient costs for the patients receiving service in 1986 was an amount in excess of $700,000.
 
 
 16
 To obtain relief from this distortion, the Medical Center submitted an amended base year cost report pursuant to 42 C.F.R. § 413.40(h) (1988). The intermediary denied this initial request to adjust or amend the 1985 cost report and issued a final Notice of Program Reimbursement ("NPR".) The Medical Center then filed a request for a base year adjustment, pursuant to 42 C.F.R. § 413.40(h) and, in the alternative, requested an "exception" to its 1986 TEFRA target amount, pursuant to 42 U.S.C. § 1395ww(b)(4)(A) and 42 C.F.R. § 413.40(g) (1988).[2]
 
 
 17
 The intermediary rejected the base year adjustment request and, instead, recommended to the HCFA that the Medical Center be granted an exception to its 1986 TEFRA target amount. In reviewing that decision, the HCFA denied the base year cost adjustment claim, as well as the request for an exception to the 1986 TEFRA target amount. The Medical Center sought a hearing before the Board on that decision.
 
 
 18
 The Board ruled that it lacked jurisdiction over the Medical Center's request for a base year cost adjustment. It found that the $10,000 amount in controversy requirement of § 1395oo(a) was not met.
 
 
 19
 The Medical Center filed this action in the district court against the Secretary and the court exercised jurisdiction pursuant to 42 U.S.C. § 1395 oo(f). See McKeesport Hospital v. Heckler, 612 F.Supp. 279, 282 (W.D.Pa.1985). Pursuant to a designation from the district court, the magistrate heard the case and issued a Report and Recommendation that the Secretary's motion to dismiss be denied and the case be remanded to the Board for review on the merits. The district court adopted the report and recommendation of the magistrate as its own and entered an order denying the Secretary's motion to dismiss and remanding the matter to the Board for determination of the merits.[3] This appeal by the Secretary followed.
 
 II. JURISDICTION
 
 20
 Although the parties do not challenge our jurisdiction, we have an independent obligation to decide whether 28 U.S.C. § 1291 (1982) provides a jurisdictional basis for this appeal.
 
 
 21
 The Medical Center filed its complaint in the district court pursuant to § 1395oo(f)(1).[4] That court reversed the Board's jurisdictional ruling and remanded the matter to the Board. It is true that "remands to administrative agencies are not ordinarily appealable," Finkelstein v. Bowen, 869 F.2d 215, 217 (3d Cir.1989), rev'd sub nom. Sullivan v. Finkelstein, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). However, there are exceptions to this rule. For example, the Medicare statute confers jurisdiction on the district court over any "civil action" filed there by a Medicare provider pursuant to 42 U.S.C. § 1395oo(f). The Supreme Court in Finkelstein construed a similar judicial review provision in the Social Security Act, 42 U.S.C. § 405(g). In reviewing the district court's remand order, the Court held that it was appealable because the "[t]he use of the term 'civil action' [in § 1395oo(f) ] suggests that each final decision of the Secretary will be reviewable by a separate piece of litigation." Id., 110 S.Ct. at 2663.
 
 
 22
 As in Finkelstein, if this appeal is dismissed and the Secretary's final decision awards relief to the Medical Center, we have grave doubts whether the Secretary could obtain any later review of the jurisdictional issue presented in this appeal. Id., 110 S.Ct. at 2664.[5] Based on the reasoning of Finkelstein, we conclude that the district court's order, which terminated proceedings in the district court, is a "final decision" subject to immediate appeal for purposes of 28 U.S.C. § 1291.[6]
 
 III. DISCUSSION
 
 23
 We now turn to the primary issue in this case, namely, did the district court err in concluding that the Board had subject matter jurisdiction to grant a hearing on the Medical Center's reimbursement claims, despite the $10,000 amount in controversy requirement found in 42 U.S.C. § 1395oo(a). Since this presents a legal issue, our standard of review is plenary.
 
 
 24
 In denying jurisdiction, the Board stated simply that "the amount in controversy for the issues you wish to raise is less than $10,000." In reversing that finding, the district court decided that the statutory jurisdictional amount requirement was easily met. It reasoned that a cost adjustment in the 1985 base year would have automatically resulted in an increase in the amounts due the provider in the years 1986, 1987 and 1988 and that these amounts would be well in excess of $10,000.
 
 
 25
 On appeal, the Medical Center contends that the district court correctly decided that it met the Board's jurisdictional requirement. In so contending, the Medical Center interprets § 1395oo(a) to require the Board to grant a hearing whenever the claim involves at least $10,000 in additional reimbursement, whether or not that reimbursement is due in the year of the cost report in dispute. Under this view, the amount in controversy requirement can be met by aggregating amounts of reimbursement due over cost reports covering several years. The Secretary argues that this "amount in controversy" requirement may not be met by including the reimbursement due to the Medical Center in the 1986-88 period because the dispute here relates only to the 1985 cost report.
 
 
 26
 As we read § 1395oo(a), it does not permit a single provider to aggregate claims over several cost reports in order to satisfy the amount in controversy requirement of § 1395oo(a) with respect to the base year. Rather, § 1395oo(a) limits a provider's request for a Board hearing to claims that could result in reimbursement of $10,000 or more due the provider under the cost report in dispute. Our view of the statute is based primarily on the language of 42 U.S.C. § 1395oo(a).
 
 
 27
 The language of 42 U.S.C. § 1395oo(a)(2) clearly provides that a single provider's request for a Board hearing on the denial of a reimbursement claim must involve $10,000 or more with respect to a "required cost report," which must be filed yearly. Further, the language of § 1395oo(a)(1)(A)(i) cannot be reconciled with the Medical Center's argument that the "amount in controversy" equals the difference between the base year costs that the Medical Center claims and the lower costs calculated by the HCFA. The "amount in controversy" is defined by this provision as "the amount of total program reimbursement due to the provider for the items and services furnished to individuals for which payment may be made ... for the period covered by such report." § 1395oo(a)(1)(A)(i) (emphasis added). Moreover, the "amount" that must be "in controversy," according to the statute, relates to a dispute regarding "payment" of reimbursement "as the Secretary may require." § 1395oo(a).
 
 
 28
 Nowhere in the statute is it stated that a single provider may aggregate amounts in controversy raised by several cost reports to meet the amount in controversy requirement to obtain a hearing before the Board. The lack of any mention of such aggregation in § 1395oo(a) demonstrates that a single provider's request must be limited to claims for reimbursement arising in a single cost report. If Congress had intended to authorize such aggregation of claims from several cost reports in a single provider appeal, it is reasonable to assume that it would have so provided.
 
 
 29
 Notwithstanding the language of the single provider hearing provision, the Medical Center suggests that we must permit it to aggregate its claims over several cost reports by analogy to the group provider hearing provision, 42 U.S.C. § 1395oo(b). The group provision authorizes the filing of a request for a Board hearing where several cost reports of members of the group involve an "amount in controversy" that "in the aggregate" is $50,000 or more.
 
 
 30
 The analogy that the Medical Center attempts to draw between this case and a group provider request fails. Congress intended to permit groups of providers to avoid the $10,000 amount in controversy requirement by aggregating their claims. They may do so, however, only when their claims present the Board with a common question of law and fact. See generally Good Samaritan Hospital v. Sullivan, No. CV88-L-523 (D.Neb. 2/16/90); Medicare & Medicaid Guide (CCH), p 38,400 (1990), 1990 WL 42393 (multiple claims may be aggregated where they present issues of law and fact common to the group), rev'd in part, aff'd in part on other grounds, 952 F.2d 1017 (8th Cir.1991). Group provider requests are subject to a less stringent amount in controversy requirement because Congress made a policy decision to treat aggregated smaller claims less stringently than single providers' claims. Cleveland Memorial Hospital, Inc. v. Califano, 594 F.2d 993, 996 (4th Cir.1979).
 
 
 31
 Thus, we cannot agree with the Medical Center's argument that decisions interpreting the group provider request provision are controlling and require the Board to find that it had jurisdiction over this single provider's application. The Medical Center asserts that Cleveland Memorial Hospital, Inc., 594 F.2d at 995 n. 4 and White Memorial Medical Center v. Schweiker, 640 F.2d 1126 (9th Cir.1981) support its position. These decisions are inapposite because they interpreted the language of the group provider hearing request provision, § 1395oo(b), according to its plain language. They did not express a view whether § 1395oo(a) permits single providers to aggregate claims over several cost report years to meet the amount in controversy requirement.
 
 
 32
 Even if the language of 42 U.S.C. § 1395oo(a) and § 1395oo(f) do not clearly deny the Board jurisdiction to entertain this provider's claims, we believe the regulations support the Secretary's position. First, the Secretary's implementing regulations do not permit the aggregation of costs over several cost reports to meet the amount in controversy requirement. They authorize a provider to request a hearing when it seeks reimbursement of $10,000 or more based on a single cost report in dispute. See 42 C.F.R. § 405.1835(a); 42 C.F.R. § 1801(a)(1) (defining an "intermediary's determination" as "a determination of total reimbursement due ... for the period covered by the cost report.") The Secretary has consistently followed this regulation in refusing to aggregate the amounts in dispute from several costs reports submitted by a single provider in determining if the $10,000 amount in controversy threshold of § 1395oo(a) has been met. See Bradner Village v. Blue Cross & Blue Shield Ass'n/Blue Cross of Indiana, Medicare & Medicaid Guide (CCH), p 38,428 at 22,412 (HCFA Administrator Decision, March 11, 1990); Home Call, Inc. v. Blue Cross & Blue Shield Association, Medicare & Medicaid Guide (CCH), p 36,261 at 13,862 (HCFA Administrator Decision, February 6, 1987).
 
 
 33
 Second, the regulation that defines how the amount in controversy is to be calculated excludes non-reimbursable costs such as costs incurred in a subsequent year. 42 C.F.R. § 405.1839(a)(2) provides that the $10,000 amount in controversy requirement will be calculated, for provider reimbursement under TEFRA, according to the following formula: "by deducting the adjusted total reimbursable program costs due to the provider on a reasonable cost basis from the total reimbursable costs claimed by the provider." (emphasis added)
 
 
 34
 The Medical Center did not meet this definition of amount in controversy because it did not claim reimbursable costs in excess of $10,000 that were actually incurred in 1985 but not included by it in the base year cost report. In other words, the Medical Center did not show that, after subtracting the amount of reimbursement determined by the intermediary on the NPR from the reimbursable costs it claims were incurred in 1985, the difference is an amount of $10,000 or more.[7]
 
 
 35
 Thus, even if the statutory provision is considered to be unclear and we are thereby able to resort to these regulations for enlightenment, we conclude that they would compel the same conclusion we have reached in interpreting the language of the statute. Since the Social Security Act expressly grants the Secretary rulemaking power, " 'our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.' " Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990), (quoting Bowen v. Yuckert, 482 U.S. 137, 145, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119 (1987), quoting Heckler v. Campbell, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983)). We cannot so find.
 
 
 36
 Given the language of the statute and the regulations, the Medical Center's request for a hearing before the Board of its 1985 base year cost report fails to "adhere to the administrative procedure which Congress has established for adjudicating [its] claims." Heckler v. Ringer, 466 U.S. 602, 619, 104 S.Ct. 2013, 2024, 80 L.Ed.2d 622 (1984). We, therefore, conclude that the district court's order does not comport with a correct application of the controlling jurisdictional provision of the Medicare statute, 42 U.S.C. § 1395oo(a)(1), and must be reversed.[8]
 
 IV. FEDERAL QUESTION JURISDICTION
 
 37
 The Medical Center contends, in the alternative, that 28 U.S.C. § 1331 confers subject matter jurisdiction on the district court to hear the Medical Center's claim.[9] The Secretary responds that the question of the availability of federal question jurisdiction under § 1331 is not properly before the court. He argues that because 28 U.S.C. § 1331 was not asserted as a ground for jurisdiction in the district court that basis for relief was not properly preserved for appellate review.
 
 
 38
 The Medical Center tacitly concedes that § 1331 was not asserted as a jurisdictional basis in its complaint or in any other aspect of the district court proceedings. It does contend, inter alia, that "this case should be remanded to the district court with instructions to allow the Medical Center to amend its complaint so as to specifically assert general federal [question] jurisdiction ... pursuant to 28 U.S.C. § 1331."
 
 
 39
 We conclude that in the exercise of our discretion and in the interests of justice this matter should be remanded to the district court to afford the Medical Center an opportunity to petition the district court for leave to amend its complaint. See 28 U.S.C. § 1653. See generally Hahn v. United States, 757 F.2d 581, 587 (3d Cir.1985) (This court may, on appeal, consider whether jurisdiction was proper on grounds not asserted below). We do so for several reasons. First, the district court did not need to consider whether § 1331 could form a basis for jurisdiction over the Medical Center's claim because under its decision that issue did not need to be reached. Second, the Secretary does not suggest any reason why it would be prejudiced by this limited action. See generally Gagliardi v. Flint, 564 F.2d 112, 114-15 (3d Cir.1977) (motion to amend jurisdictional statement to include reference to § 1331 jurisdiction may be granted absent a showing of prejudice to non-moving party with respect to issues tried in district court). If the Secretary does desire to assert prejudice that issue can be presented to the district court. Third, this court has been liberal in exercising its discretion to permit such amendments to be made in an attempt to cure defective allegations of jurisdiction. This is done in the interest of justice to avoid dismissal of suits on purely technical grounds. Local No. 1 (ACA) v. International Brotherhood of Teamsters, 614 F.2d 846, 853 (3d Cir.1980). For these reasons, a remand granting leave to seek permission to file such a request is granted.[10]
 
 V. CONCLUSION
 
 40
 We conclude that the district court erred in deciding that the Medical Center's base year adjustment request met the amount in controversy requirement of § 1395oo(a) and that portion of the order must be reversed. We will, however, remand the cause to the district court to permit the Medical Center to file an application for leave to amend its complaint to assert a 28 U.S.C. § 1331 basis for this action.
 
 
 41
 SCIRICA, Circuit Judge, concurring in part and dissenting in part.
 
 
 42
 I concur in the majority's decision to remand this case to allow the Medical Center to assert 28 U.S.C. § 1331 as a basis for jurisdiction in the district court. However, I respectfully dissent from the majority's conclusion that the Medical Center has failed to meet the jurisdictional requirements of 42 U.S.C. § 1395oo(a).
 
 
 43
 The Secretary's regulations provide, in part:
 
 
 44
 (e) Hospital requests regarding applicability of the rate of increase ceiling. A hospital may request an exemption from, or exception or adjustment to, the rate of cost increase ceiling imposed under this section.... HCFA's decision is subject to review under Subpart R of Part 405 of this chapter [i.e., by the PRRB].
 
 
 45
 42 C.F.R. § 413.40(e) (emphasis added).
 
 
 46
 The Secretary's regulations further provide:
 
 
 47
 (h) Adjustments--(1) Comparability of cost reporting periods. (i) HCFA may adjust the amount of the operating costs considered in establishing cost per case for one or more cost reporting periods, including both periods subject to the ceiling and the hospital's base period, to take into account factors that could result in a significant distortion in the operating costs of inpatient hospital services....
 
 
 48
 42 C.F.R. § 413.40(h)(1)(i) (emphasis added).
 
 
 49
 The Medical Center seeks, under 42 C.F.R. § 413.40(h), an adjustment to the base year costs that establish its cost per case and TEFRA increase ceilings. It contends that its base year costs were distorted by: (1) the inclusion of patients who were subsequently transferred to an acute care facility; and (2) the exclusion of physical expansion costs. In requesting an adjustment to its base year costs to account for these distortions, the Medical Center seeks to increase its reimbursable cost ceilings in subsequent years. It seems to me that the amount in controversy analysis in requests for such base year cost adjustments necessarily includes subsequent years, because the effect of granting the adjustment would be to increase reimbursable costs in subsequent years. Reimbursements in the base year would not be affected, because the adjustment is to "the amount of the operating costs considered in establishing cost per case"--not to the amount of operating costs actually reimbursed in the base year.
 
 
 50
 In cases involving group appeals, both the Fourth and Ninth Circuits have considered effects upon reimbursement in subsequent years in determining whether the amount in controversy requirement for PRRB jurisdiction was met. White Memorial Medical Ctr. v. Schweiker, 640 F.2d 1126, 1128 (9th Cir.1981); Cleveland Memorial Hosp. v. Califano, 594 F.2d 993, 996 (4th Cir.1979). As the United States Court of Appeals for the Fourth Circuit noted:
 
 
 51
 The Board's distinction, by which one figure determines the scope of the appeal and another determines jurisdiction, is without foundation in either the statute or the applicable regulation. It is also unrelated to the purpose of the amount in controversy requirement, which is to ensure the substantiality of issues raised before the Board.
 
 
 52
 Cleveland Memorial Hosp., 594 F.2d at 996 (footnote omitted).
 
 
 53
 The Secretary contends that these cases are inapposite because the amount in controversy requirement in group appeals is "fundamentally different" from that in individual appeals. The PRRB has jurisdiction over group appeals from HCFA decisions if "the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more." 42 U.S.C. § 1395oo(b).
 
 
 54
 The amount in controversy requirement for group appeals differs from that for individual appeals only in the increase of the jurisdictional amount from $10,000 to $50,000, and by the addition of the phrase, "in the aggregate." Compare 42 U.S.C. § 1395oo(b) (group appeals) with 42 U.S.C. § 1395 oo(a)(2) (individual appeals). The Secretary contends that it is only the phrase "in the aggregate" that permits consideration of effects in subsequent years to meet the amount in controversy requirement. A less strained construction of this statutory language would read "in the aggregate" to refer to the aggregation of the claims of multiple providers. I can discern no reason why the jurisdictional requirements in group appeals should be met by consideration of effects of requested adjustments upon reimbursement in subsequent years, whereas the jurisdictional requirements in individual appeals can be met by consideration only of the year for which the adjustment is requested.
 
 
 55
 Moreover, the Secretary's interpretation appears to contravene Congress's intent in enacting the amount in controversy requirement. "The legislative history of § 1395oo, although relatively brief, shows a clear intent to provide independent review of reimbursement decisions by fiscal intermediaries which involve significant issues." Cleveland Memorial Hosp., 594 F.2d at 996. The purpose of § 1395oo was to allow the PRRB (and the federal courts) "to review and decide upon substantial reimbursement issues raised by providers of services." Id. (quoting H.R.Conf.Rep. No. 1407, reprinted in 1974 U.S.C.C.A.N. 5992, 5995-96) (Fourth Circuit's emphasis omitted). The Medical Center contends that the requested adjustment would result in its receipt of additional reimbursements of approximately $2,000,000 for the years 1986-88, and of approximately $700,000 for 1986 alone. These amounts appear to me to be both "significant" and "substantial."
 
 
 56
 Additional statutory support for the Medical Center's position is provided by 42 U.S.C. § 1395x(v)(1)(A) (entitled "Reasonable costs").[1] "Numerous courts have construed section 1395x(v)(1)(A) as imposing a statutory duty upon the Secretary to make suitable corrective adjustments whenever the amount of reimbursement determined by the chosen method of cost calculation fails to adequately reimburse all reasonable costs." Regents of the Univ. of Cal. v. Heckler, 771 F.2d 1182, 1188 (9th Cir.1985) (citing and following cases imposing this duty). The Secretary's interpretation circumvents this statutory duty.
 
 
 57
 Finally, the Secretary's interpretation may well have the unfortunate consequence of preventing the kind of capital improvements that are largely responsible for the current controversy. Had the Medical Center not undertaken to improve its facility, it would not need an adjustment to its base year costs to correct the distortion caused by expenses stemming from capital improvements incurred in subsequent years. Congress cannot have intended such a result.
 
 
 
 [1]
 42 C.F.R. § 405.471(c)(2)(ii) [redesignated in 1985 as 42 C.F.R. § 412.29(a) ] (hereinafter "the 75 percent rule.") See also 42 C.F.R. § 412.23(b). See generally, Delaware County Memorial Hospital v. Bowen, 871 F.2d 10 (3d Cir.1989)
 
 
 [2]
 Later, in support of this base year adjustment request, the Medical Center submitted a further revision to the cost report on April 13, 1988
 
 
 [3]
 Although the district court's order itself does not explicitly implement its ruling as to the jurisdiction of the Board, the parties have treated it as doing so. Respecting substance over form we conclude that the order did amount to a final order
 
 
 [4]
 "Providers shall have the right to obtain judicial review of any final decision of the [Board], or of any reversal, affirmance, or modification by the Secretary by a civil action commenced within 60 days of the date on which notice of any final decision by the [Board] or of any reversal, affirmance or modification by the Secretary is received."
 
 
 [5]
 Thus, the posture of this appeal differs from a case where the provider has appealed a remand by the district court to obtain broader relief. Finkelstein, 110 S.Ct. at 2663 n. 3
 
 
 [6]
 Moreover, this result is supported by decisions in other circuits prior to Finkelstein. St. Mary's Hospital Medical Center v. Heckler, 753 F.2d 1362 (7th Cir.), cert. denied, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); Edgewater Hospital, Inc. v. Bowen, 857 F.2d 1123, 1127-9 (7th Cir.1988); Tallahassee Memorial Regional Medical Center v. Bowen, 815 F.2d 1435, 1443 n. 12 (11th Cir.1987), cert. denied, 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988)
 
 
 [7]
 The Secretary contends that the amount in controversy requirement of § 1395oo(a) requires the provider to request relief that will result in the payment from the Medicare program of a positive amount of $10,000 or more for the cost report in dispute. Given our resolution of this issue, we need not address the merits of the Secretary's definition of amount in controversy in its brief on appeal
 
 
 [8]
 Because of our decision we need not consider the Secretary's mootness argument since it is predicated on an assumption that we would otherwise affirm the district court's order
 
 
 [9]
 Section 1331 provides: "The district courts shall have original jurisdiction in all civil actions arising under the Constitution, laws or treaties of the United States."
 
 
 [10]
 We do not decide at this time whether the hospital's claims may properly be asserted under this jurisdictional provision
 
 
 [1]
 Title 42 U.S.C. § 1395x(v)(1)(A) provides, in pertinent part:
 The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services
 42 U.S.C. § 1395x(v)(1)(A).